UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

| | : | |
|---|---|---|
| NATHANIEL CARTER, | : | CASE NO. 1:07-cv-3717 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | OPINION & ORDER |
| | : | [Resolving Docs. No. 33, 36, 40.] |
| GORDON MANSFIELD, et. al., | : | |
| | : | |
| Defendants. | : | |
| | : | |

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

The Defendants have filed a motion for summary judgment. [Doc. 33, 40.] The Plaintiff opposes the motion. [Doc. 36.] For the following reasons, the Court **GRANTS** the Defendants' motion for summary judgment.

**I. Background**

With his complaint, Plaintiff Nathaniel Carter alleges that Defendants Gordon H. Mansfield and James B. Peake discriminated against him on the basis of his sex and retaliated against him because of his participation in protected activities and opposition to unlawful practices in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). Carter works at the Louis Stokes VA Medical Center ("VA Medical Center") in Brecksville, Ohio and alleges that the Defendants discriminated against him with regard to a promotion at that facility. [Doc. 1.]

Carter, who is male, works as a cook in the Nutrition and Food Service Department at the VA Medical Center. [Doc. 33, Ex. M at 8.] In January 2006, Carter applied for the position of cook supervisor along with six other applicants – three males and three females. [Doc. 33, Ex. A.] The

selection process for the cook supervisor position included a multi-step process that took into account five factors: (1) a performance-based interview; (2) a written sample performance appraisal; (3) on-the-job leadership history; (4) five year performance award history; and (5) one year attendance reliability history. [Doc. 33, Ex. F.] The VA Medical Center ranked each candidate with respect to each of the five factors and applied these weighted rankings to a matrix, resulting in a final ranking that determined the top candidates, ranked 1 (highest) through 7 (lowest). [Doc. 33, Ex. J.] Lois Lenard, Chief of the Nutrition and Food Service Department, used these rankings when selecting the top two candidates, Olivia Mosley and Virginia Alston (both female), to fill the two available cook supervisor positions. [Doc. 33, Ex. F at 7.]

The first part of the multi-step selection process for the cook supervisor position was a performance-based interview. Linda Carr-Whitehead, Clinical Manager at the Department of Veterans' Affairs, and Rebecca Jewel, Administrative Systems Dietician, conducted these interviews with each of the applicants at Nutrition Chief Lenard's request. [Doc. 33, Ex. B at 2.] Each applicant was asked questions such as: "Tell us about experiences you have had that prepare you for a management position?" and "What experiences do you have with training others?" [Doc. 33, Ex. C at 2-3.] Jewel recorded the applicants' responses as the applicants were speaking and Clinical Manager Carr-Whitehead reviewed these typed responses for accuracy after each interview. [Doc. 33, Ex. B at 4.]

After all of the performance-based interviews were completed, Carr-Whitehead and Dietician Jewel compiled a ranking of the candidates based on their performance in the interview, including aspects such as any "supervisory experience or skills that they've had in nutrition and food service and any other field . . . , and the type and numbers of people that they . . . supervised before, any courses that they've taken in leadership . . . , and any experience and training and techniques that

they've had with training others." [Doc. 33, Ex. B-1 at 6.] Applicants Mosley and Alston were ranked first and second, respectively, while Carter was ranked seventh. [Doc. 33, Ex. J.] According to Clinical Manager Carr-Whitehead, Mosley and Alston had "quite a bit of experience, years of experience either as supervisors, as leaders filling in as supervisors, and based on their answers to the questions, were very specific about the types of positions that they have held in either supervisory or leadership roles." [Doc. 33, Ex. B-1 at 6.]

On the other hand, the reviewers found that Carter's answers "weren't very detailed" and were "very general in scope. [*Id.* at 6-7.] Additionally, according to Jewel, Carter's responses were "incomplete, did not offer any insight into the applicant[']s ability to perform the job based on past experience[,] and were sometimes not relevant to the question asked." [Doc. 33, Ex. D at 2.] Clinical Manager Carr-Whitehead testified that Carter's gender was not taken into account as part of the ranking. [Doc. 33, Ex. B-1 at 8.]

The second test in the selection process for the cook supervisor position required each applicant to write a sample employee performance appraisal that was based on the performance of a fictional employee named Sue Z. Que. [Doc. 33, Ex.E; E-1.] To insure anonymity, Nutrition Chief Lenard's secretary numbered the tests before she gave them to Dr. Ann Raguso, Executive Internship Director at the Department of Veterans' Affairs. [Doc. 33, Ex. F at 7.] Raguso then ranked all the candidates based on how they rated the "imaginary employee [Sue Z. Que] and based on how they were able to communicate and justify their decisions for [the ranking]." [*Id.*] According to Lenard, Internship Director Raguso did not know any of the applicants. With respect to this performance appraisal task, the two candidates who were ultimately chosen for the position of cook supervisor, Alston and Mosley, ranked second and third, respectively. Carter ranked sixth out of seven applicants. [Doc. 33, Ex. E-2.] To reemphasize, Carter's gender and EEOC activity could not

influence Raguso's ranking of the applicants' sample performance appraisals because these documents did not contain the applicants' names. [*Id.*]

For the third step of the cook supervisor selection process, Lenard and William Ward, Operations Manager of the Nutrition and Food Service Department, gave comments on the on-the-job leadership history of each applicant. [Doc. 33, Ex. F at 7.] Ward, in his role as supervisor, recounted the applicants' traits and behaviors while Lenard compiled them. [*Id.*] Subsequently, Lenard ranked the applicants based on their leadership qualities and on how closely these qualities matched up to the performance standards expected from a supervisor in the Department of Veterans' Affairs. [*Id.*; *see also* Doc. 33, Ex. G at 9.] With respect to this evaluation, applicants Mosley and Alston ranked first and third, respectively, while Carter ranked seventh. [Doc. 33, Ex. H.]

Operations Manager Ward and Lenard ranked Carter last because of: (1) his lack of interpersonal skills; (2) the fact that he was not a "team player"; and (3) his failure to set a good example for the other employees by wasting time during work hours and sleeping in the storeroom while his fellow cooks were working. [*Id.* at 2 -3.; *see also* Doc. 33, Ex. G at 10-12.] According to Lenard, Carter's EEOC activity had no effect on the selection process though he was apparently the only applicant for the cook supervisor position who had been involved in EEOC activity, [Doc. 33, Ex. F-1 at 11-12.], and although Operations Manager Ward mentioned Carter's arrogance about his EEOC activity in the on-the-job history inquiry. [Doc. 33, Ex. H at 2.] Additionally, Manager Ward allegedly indicated to several of the other cooks that Carter would never be their supervisor. [Doc. 33, Ex. G at 7.]

Another part of the cook supervisor selection process was the applicants' five year performance award history. Lenard indicated that she had asked her secretary to look through the employment records of all the applicants and to note any awards that they had received for their work

performance. [Doc. 33, Ex. F at 7.] Lenard then ranked the applicants based on the number of awards they had received within the previous five years. [Id.] Alston had received seven awards for her employee performance and was ranked first while Mosley had six awards and was ranked second. [Doc. 33, Ex. I.] Carter had received no awards and was ranked fifth. [Id.]

Finally, the Defendants considered the applicants' reliability, as demonstrated through their work attendance record. To evaluate attendance, Lenard examined their attendance records and ranked them based on the number of absences occurring within the previous year. [Doc. 33, Ex. F at 7.] Only events, and not individual absences, were counted – "a three-day sick leave would count as one event." [Id. at 8.] According to Lenard, tardiness, annual leave, and excused absences were not factored into the ranking. [Id.] The ranking was based primarily on absences due to sick leave (even approved sick leave) because, as Lenard indicated, there was a "large abuse of sick leave in our department, so it's something that we look at regularly . . . . It's an important measure for us." [Id.] With respect to this performance measure, Alston was ranked second and Mosley was ranked third while Carter was ranked fifth. [Doc. 33, Ex. K.]

The Defendants then quantified the performance of each candidate for the cook supervisor position on each of the five measures of assessment described above. Using this methodology, the Defendants established the overall ranking of all seven candidates. [Doc. 33, Ex. F-1 at 8.] Mosley and Alston were ranked first and second, respectively, while Carter was ranked seventh. On January 25, 2006, Lenard selected Mosley and Alston for the cook supervisor positions. [Doc. 33, Ex. A.]

On March 2, 2006, Carter filed an administrative complaint ("EEOC Complaint") alleging that the VA Medical Center engaged in reverse gender discrimination and retaliation when it failed to promote him. [Doc. 33, Ex. L at 1.] The VA Medical Center then referred the complaint to the Department of Veterans' Affairs Office of Employment Discrimination Complaint Adjudication for

an immediate final agency decision based on the investigative record.  [*Id.*]

On November 8, 2007, the Department of Veterans' Affairs Office of Employment Discrimination Complaint Adjudication issued its Final Agency Decision.  It found that Carter failed to prove that the VA Medical Center had discriminated against him.  [*Id.* at 7.]  Carter subsequently filed this lawsuit on December 4, 2007, alleging that the Defendants discriminated against him through reverse gender discrimination and retaliated against him by failing to promote him to the cook supervisor position.  [Doc. 1.]

## II.  Legal Standard

Summary judgment is appropriate where the evidence submitted shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56©.  The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  "A fact is material if its resolution will affect the outcome of the lawsuit."  *Martingale, LLC v. City of Louisville*, 361 F.3d 297, 301 (6th Cir. 2004) (citing *Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986))).

The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp.,* 477 U.S. at 323 (quoting FED. R. CIV. P. 56©).  However, the moving party is under no "express or implied" duty to "support its motion with affidavits or other similar materials negating the opponent's claim."  *Id.*

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set

forth specific facts showing a triable issue.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts.  *See id.* at 586.  Nor can the nonmoving party rely upon the mere allegations or denials of its pleadings.  FED. R. CIV. P. 56(e).

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party.  *Thomas v. Cohen,* 453 F.3d 657, 660 (6th Cir. 2004) (citations omitted).  "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial."  *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)).  Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Martingale,* 361 F.3d at 301 (citing *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.,* 96 F.3d 174, 178 (6th Cir. 1996)) (internal quotations omitted).

### III.  Discussion

With his Complaint, the Plaintiff raises the following claims: (1) reverse sex discrimination; and (2) retaliation.  [Doc. 1.]  The Defendants seek summary judgment in their favor on both claims.  [Doc. 33, 40.]  The Court will address the Plaintiff's claims in turn.

#### *A. Reverse Sex Discrimination Claim Under Federal Law*

A plaintiff can establish a prima facie disparate treatment case for sex discrimination under Title VII by introducing direct evidence of discrimination or by using the *McDonnell Douglas* paradigm to infer discrimination from circumstantial evidence.  *See McDonnell Douglas Corp. v.*

*Green,* 411 U.S. 792, 802 (1973); *see also Kline v. Tenn. Valley Auth.,* 128 F.3d 337, 349 (6th Cir. 1997). Direct evidence is evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Tepper v. Potter,* 505 F.3d 508, 516 (6th Cir. 2007) (citations omitted). Such evidence "does not require a factfinder to draw any inferences in order to conclude that the challenged employment action was motivated at least in part by prejudice against members of the protected group." *Id.*

Because Plaintiff Carter does not provide direct evidence of sexual discrimination, the Court applies the *McDonnell Douglas* framework. In a sexual discrimination claim based on a failure to promote, the plaintiff bears the initial burden of establishing that he: (1) is a member of a protected class; (2) applied and was qualified for a promotion; (3) was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions. *Ledbetter v. Gilley,* 385 F.3d 683, 690 (6th Cir. 2004) (citations omitted).

The Sixth Circuit has applied this four-prong test to cases of reverse discrimination – where a member of the majority is claiming discrimination – holding that, in such cases, a plaintiff establishes "a prima facie case upon showing that 'background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority . . . and upon a showing that the employer treated differently employees who were similarly situated but not members of the protected group.'" *Briggs v. Potter,* 463 F.3d 507, 517 (6th Cir. 2006) (citations omitted).

Once the plaintiff establishes a prima facie case of sexual discrimination, a presumption arises that the defendant unlawfully discriminated against the plaintiff. The burden then shifts to the defendant to articulate a legitimate nondiscriminatory reason for its actions. *See Texas Dep't. of Comm. Affairs v. Burdine,* 450 U.S. 248, 254-56 (1981); *see also Wright v. Murray Guard, Inc.,* 455 F.3d 702, 706 (6th Cir. 2006). If the defendant articulates such a legitimate nondiscriminatory

reason, then the burden shifts back to the plaintiff to prove that the stated reason is a pretext for discrimination by either persuading the court that "a discriminatory reason more likely motivated the employer or . . . by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256 ; *see also Wright,* 455 F.3d at 706-07. "'[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit' a finding of unlawful discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148 (2000). Although the *McDonnell Douglas* presumption shifts the burden of production to the defendant, the ultimate burden of persuasion remains at all times with the plaintiff. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507 (1993).

First, the Court determines whether Plaintiff Carter has met his initial burden under the *McDonnell Douglas* framework. The Plaintiff references the following adverse employment action allegation: that he was not selected for the position of cook supervisor. The Court finds that the Plaintiff fails to meet his burden with regard to the first and the fourth elements of the *McDonnell Douglas* standard – that he is a member of a protected class and that he was treated less favorably than similarly situated, non-protected employees.

To satisfy the first prong of the *McDonnell Douglas* test in a reverse sex discrimination case, a plaintiff must present "evidence of [the defendant's] unlawful consideration of [gender] as a factor in hiring in the past . . . ." *Zambetti v. Cuyahoga Cmty. Coll.,* 314 F.3d 249, 256 (6th Cir. 2002). This evidence can be found in the defendant employer's "past hiring, promotion, or termination practices," which would suggest a record of favoring female applicants. *Goller v. Ohio Dep't of Rehab. & Corr.*, No. 07-3750, 2008 WL 2796080, at *5 (6th Cir. July 18, 2008). The court in *Zambetti* also indicated that, at least in the racial discrimination context, the first requirement of a prima facie case of reverse discrimination is satisfied when an adverse employment decision is made

by an individual who is a member of the protected group. See *Zambetti,* 314 F.3d at 257.

In this case, Carter has produced no evidence suggesting that the VA Medical Center or the Nutrition and Food Service Department has a history of favoring female applicants for promotions, either generally or with respect to the cook supervisor positions. Moreover, while Lois Lenard, the primary decisionmaker in this case, is female, she relied on objective criteria, as well as on recommendations from at least one male VA Medical Center employee – William Ward – in selecting two individuals for the cook supervisor position. As a result, Plaintiff Carter fails to create a genuine issue of material fact with respect to the first requirement of the *McDonnell Douglas* standard in this reverse discrimination context.

Even if Carter can satisfy his burden with regard to the first element of the *McDonnell Douglas* standard, he will not be able to do so with regard to the fourth element because he cannot show that his "employer treated differently employees who were similarly situated but not members of the protected group." *Briggs,* 463 F.3d at 517 (citations omitted). Employees are not considered similarly situated in a failure to promote case "by virtue of the fact that they applied for the same position and their applications were reviewed by the same committee." *White v. Metro. Hous. Auth.,* 429 F.3d 232, 241 (6th Cir. 2005). Instead, to meet his burden of proof under this requirement of the *McDonnell Douglas* test, "it is incumbent upon the plaintiff to establish that [he] and the non-protected person who ultimately was hired for the desired position had similar qualifications." *Id.* at 242. "[T]o establish that an employee is an appropriate comparator, 'the plaintiff [must] demonstrate that he . . . is similarly situated to the [claimed comparator] in all *relevant* respects.'" *Wright,* 455 F.3d at 710 (citing *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 353 (6th Cir. 1998)).

In this case, Plaintiff Carter fails to point to any evidence creating a genuine issue of material fact that the Defendants inherently treated female employees more favorably than male employees.

Although Alston and Mosley, two female applicants, were selected for the cook supervisor positions, one other female applicant – Patricia Thomas – was not selected. [Doc. 33, Ex. J.] The applicant who ranked third, just behind the two selected female applicants, was male. [*Id.*] Additionally, Carter fails to show that Alston and Mosley were similarly situated to him with regard to their skills and qualifications for the position of cook supervisor. For example, Alston and Mosley's responses to questions during the performance-based interview were superior to Carter's, [Doc. 33, Ex. B-1 at 6.], and they performed better on the sample performance appraisal than Carter. [Doc. 33, Ex. E-2.] Both of the selected female applicants, unlike Carter, had extensive food service experience and leadership experience. [Doc. 33, Ex. G at 13.] Alston had received seven awards for her work performance and Mosley had received six such awards while Carter had not received any awards for his work at the VA Medical Center. [Doc. 33, Ex. I.] Finally, both Alston and Mosley had fewer absences from work than Carter. [Doc. 33, Ex. K.]

With no factual support to show that Carter and the female applicants are similarly situated, the Court does not find that Carter has met his prima facie burden with regard to this claim. *See White*, 429 F.3d at 240-41 (holding that "it is insufficient for a plaintiff in a failure to promote sex discrimination case merely to point to a [woman] who received the job in satisfying the fourth prong").

However, even if the Court had found that Carter could establish a prima facie case, the Defendants offer a legitimate nondiscriminatory reason for their decision not to promote the Plaintiff: Carter was the least qualified candidate for the position of cook supervisor based on the selection committee's rankings. [Doc. 33, Att. 1 at 11.] Indeed, Carter ranked seventh out of seven applicants at the conclusion of the multi-step search process. [*Id.*]

As the Defendants have come forward with a non-discriminatory justification for their decision

not to promote Carter, the Court finds that Carter fails to create a genuine issue of material fact with regard to the pretextual nature of the Defendants' explanation. The Plaintiff received very low scores on several wholly objective components of the cook supervisor selection process, [Doc. 33, Ex. J.], and Carter does not offer any evidence, aside from his own conjectures, to show that the selected applicants were not as qualified for the cook supervisor position as he was. [Doc. 33, Ex. M at 11.]

Because the Plaintiff fails to meet his burden under the *McDonnell Douglas* paradigm, the Court grants the Defendants' motion for summary judgment on this claim.

### B. Retaliation Claim Under Federal Law

Title VII prohibits retaliatory actions against employees who oppose, report or participate in investigations involving conduct that allegedly violates Title VII. *See* 42 U.S.C. § 2000e-3(a). To establish a prima facie case of retaliation, a plaintiff can either present direct evidence of retaliation or use the *McDonnell Douglas* framework to infer retaliation from circumstantial evidence. "When determining whether proffered evidence constitutes direct evidence of discrimination, [the Court] consider[s] whether the evidence, if believed, compels the conclusion that retaliatory animus played a part in the challenged decision." *Weigel v. Baptist Hosp. of E. Tenn.,* 302 F.3d 367, 383 (6th Cir. 2002).

Because Plaintiff Carter does offer direct evidence of retaliation, the *McDonnell Douglas* test applies. To establish a prima facie case of retaliation under *McDonnell Douglas*, a plaintiff must show that (1) he engaged in a protected activity; (2) the employer knew about the protected activity; (3) the employer discriminated against the employee in a materially adverse manner;[1] and (4) there

---

[1] *See Burlington Northern & Santa Fe Ry. Co. v. White,* 548 U.S. 53 (2006) (expanding the scope of this element to include discriminatory actions that are not necessarily employment-related but are materially adverse to the employee).
   The *Burlington Northern* Court noted that Title VII "protects an individual not from all retaliation, but from

was a causal connection between the protected activity and the employer's action. *Smith v. City of Salem*, 378 F.3d 566, 570 (6th Cir. 2004). As described above, if the plaintiff meets his burden, then the burden shifts to the defendant to "demonstrate that the proffered reason was not the true reason for the employment decision." *Lindsay v. Pizza Hut of Am.*, 57 Fed. Appx. 648, 650 (6th Cir. 2003) (quoting *Burdine,* 450 U.S. at 256).

In this case, the Plaintiff sufficiently satisfies the first three elements of his prima facie case. First, his EEOC complaints constitute protected activities. Second, construing the facts in the light most favorable to the Plaintiff, a reasonable juror could find that his employer knew about these complaints. Third, a failure to promote would dissuade "a reasonable worker from making or supporting a charge of discrimination." *Burlington Northern & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006).

The Plaintiff does offer evidence regarding the fourth element of his prima facie case of retaliation. To show a causal connection between the protected activity and the materially adverse employment action, a plaintiff must usually show a temporal connection coupled with other indicia of retaliatory conduct.[2/] *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 364 (6th Cir.2001). Plaintiff Carter does not establish any temporal connection between his previous EEOC complaints and the promotion decision. Carter has not singled out any particular instance of EEOC activity as motivating his employer's desire not to promote him. Indeed, Carter has stated that "I filed so many cases that I don't remember which ones [were filed] on what date." [Doc. 33, Ex. M at 6.]

---

retaliation that produces an injury or harm . . . . [A] plaintiff must show that a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 67-68. (citations omitted). Title VII's anti-retaliation provision does not, however, protect against "those petty slights or minor annoyances that often take place at work and that all employees experience." *Id.* at 68.

[2/] In some cases, the Sixth Circuit has allowed temporal proximity, standing alone, to permit an inference of retaliation to satisfy the prima facie case. *See DiCarlo v. Potter,* 358 F.3d 408, 421 (6th Cir. 2004).

Moreover, since starting work at the VA Medical Center in 1985, Carter has been steadily promoted despite filing numerous EEOC complaints. [*Id.* at 8.]

Carter argues that no other applicants for the cook supervisor position were involved in EEOC activity and points to three statements allegedly made by William Ward in supporting his contention that he was retaliated against due to his EEOC activity: (1) "everything to Carter is an EEO"; (2) "Carter was arrogant about his EEOs"; and (3) "as long as I [Ward] [am] in the office, Carter [will] never make . . . supervisor." [Doc. 33, Ex. M at 15.] These arguments and statements, however, do not create a genuine issue of material fact with regard to whether there is a causal connection between Carter's protected activity and the fact that he was not promoted. At least four of the five aspects of the multi-step selection process for the cook supervisor position were wholly objective and thus could not have been influenced by either Ward's statements or by the fact that Carter was allegedly the only applicant to engage in EEOC activity.

Even if the Court assumes that Carter has made out a prima facie case of retaliation, the Defendants have met their burden of showing that there is a legitimate and nondiscriminatory reason for their decision to promote others rather than the Plaintiff. As noted above, Carter was the least qualified candidate for the position of cook supervisor based upon objective rankings. [Doc. 33, Att. 1 at 11.]

Carter does not offer evidence that presents a genuine issue of material fact as to whether the Defendants' proffered reason is a pretext for retaliation. In order to show that a defendant's given reason is pretextual, a plaintiff must submit evidence that the reason (1) had no basis in fact; (2) did not actually motivate the defendant's challenged conduct; or (3) was insufficient to warrant the challenged behavior. *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003). Given the detailed, objective, and multi-step hiring process for the cook supervisor position, which

resulted in a ranking of all the candidates, and the fact that Carter ranked seventh out of the seven candidates, Carter fails to meet his burden of showing pretext and thus this claim fails.

### IV. Conclusion

In conclusion, the Court **GRANTS** the Defendants' motion for summary judgment and dismisses the Plaintiff's claims with prejudice.

IT IS SO ORDERED.


Dated: September 16, 2008                               *s/     James S. Gwin*
                                                        JAMES S. GWIN
                                                        UNITED STATES DISTRICT JUDGE